# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

DANIEL L. HODGES,
     Petitioner,

v.                      Case No.  3:10cv359/LC/CJK

KENNETH S. TUCKER,[1]
     Respondent.

_____

## ORDER and
## REPORT AND RECOMMENDATION

     Before the Court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1) and supporting memorandum (doc. 2).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 28).  Petitioner replied.  (Doc. 30).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the Court show that petitioner is not entitled to federal habeas relief, and that the petition should

_____

[1]Kenneth S. Tucker succeeded Edwin G. Buss as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d).

be denied.

BACKGROUND AND PROCEDURAL HISTORY

On January 7, 2008, petitioner was indicted for first degree murder (Count 1) and child neglect (Count 2) in Santa Rosa County Circuit Court Case Number 07-1734. (Doc. 28, Ex. A).[2]  A charge of sexual battery (Count 3) was added pursuant to consolidation of another case (Case Number 08-1569) with this main case.  On April 15, 2009, petitioner, represented by counsel, entered a counseled no contest plea, with the State's agreement, which provided as follows:  (1) petitioner would plead no contest to the lesser included offense of second degree murder with a firearm on Count 1 and to child neglect as charged in Count 2; (2) petitioner would be sentenced on Count 1 to life in prison without parole and with a special provision of a 25-year mandatory minimum; (3) petitioner would be sentenced on Count 2 to a concurrent term of five years imprisonment; and (4) the State would dismiss the sexual battery charge (Count 3). (Ex. B).  The trial court accepted petitioner's plea after an extensive and detailed plea colloquy, and sentenced petitioner consistent with the terms of the agreement. (*Id.*; *see also* Ex. E, pp. 65-71).  Petitioner filed a notice of appeal to the Florida First District Court of Appeal ("First DCA"), but later voluntarily dismissed the appeal. (Ex. C).  Petitioner's appeal was dismissed on January 21, 2010. (*Id.*).

On February 18, 2010, petitioner filed a counseled motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Ex. D).  Petitioner's motion presented one issue: that his plea was involuntary because defense counsel Mr. Allred "led [petitioner] to believe that [he] would be eligible for executive clemency within

---

[2]Hereafter, all references to exhibits are to those provided at Doc. 28, unless otherwise noted.

10 to 15 years of incarceration following sentencing." (*Id.*, p. 3). Petitioner stated that he and his family members "were all under the false impression, notwithstanding the plea colloquy in this case, that I would be released from prison following service of 10-15 years incarcerative time." (*Id.*). The trial court denied relief without an evidentiary hearing. (Ex. E). The First DCA per curiam affirmed without written opinion on June 18, 2010. *Hodges v. State*, 37 So. 3d 852 (Fla. 1st DCA 2010) (Table) (copy at Ex. F). The mandate issued July 7, 2010. (Ex. F).

Petitioner filed his federal habeas petition in this Court on September 13, 2010. (Doc. 1, p. 14). Petitioner raises one ground for relief: that his plea was involuntary because defense counsel misadvised him that he "would be eligible for executive clemency within 10-15 years of incarceration following sentencing" and that "a life sentence for the offense of Second Degree murder was only twenty-five years." (Doc. 1, p. 6). Respondent asserts that petitioner is not entitled to federal habeas relief because his claim is without merit, and that to the extent petitioner includes new factual allegations in support of his claim the Court should not consider them because they were not presented to the state courts. (Doc. 28, pp. 11, 20-25).

LEGAL STANDARDS

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in

State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, — U.S. —, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). If the state court decision <u>is</u> contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the

state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision. *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not

err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts). In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was

incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. 930, 954, 127 S. Ct. 2842. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

<u>Clearly Established Federal Law Governing Challenges To Guilty Pleas On Grounds Of Ineffective Assistance Of Counsel</u>

A plea of no contest stands on equal footing with a guilty plea in determining its validity. *North Carolina v. Alford*, 400 U.S. 25, 35-36, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *Hudson v. United States*, 272 U.S. 451, 47 S. Ct. 127, 129, 71 L. Ed. 347 (1926). "A guilty plea is an admission of criminal conduct as well as the waiver of the right to trial." *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir. 1995) (*citing Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469, 25 L. Ed. 2d 747

(1970)). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady* at 748. The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." *Alford*, 400 U.S. at 31, 91 S. Ct. 160; *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding. *See McMann v. Richardson*, 397 U.S. 759, 770-71, 90 S. Ct. 1441, 1448-49, 25 L. Ed. 2d 763 (1970).

When a petitioner challenges the validity of his plea on allegations of ineffective assistance of counsel, the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies. *Hill v. Lockhart*, 474 U.S. 52, 57-58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); *see also Missouri v. Frye*, — U.S. —, 132 S. Ct. 1399, 1404, — L. Ed. 2d — (2012) ("[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*."). Petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the plea context, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S. Ct. 366.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v.*

*Kentucky*, — U.S. —, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

## DISCUSSION

Petitioner presented his claim concerning counsel's advice as to clemency in his Rule 3.850 motion. The Rule 3.850 court identified *Strickland, supra* and *Hill, supra*, as the controlling legal standards. (Doc. 28, Ex. E, p. 60). The Rule 3.850 court denied relief as follows:

> Defendant raises one ground for postconviction relief alleging his plea was involuntary as it was entered based on the misadvice of counsel. Defendant avers, "notwithstanding the plea colloquy in this case," counsel led him to believe he would be eligible for executive clemency after serving ten to fifteen years of incarceration. Defendant claims counsel repeatedly informed him and family members he would receive clemency, and Defendant attaches, in support of his motion, a letter from counsel indicating his hope Defendant would receive clemency one day. Defendant claims this representation was an inaccurate statement of the law as the plea colloquy reflects a minimum mandatory life sentence with no parole. Defendant avers counsel's "actions were thus outside the reasonable performance of counsel in a similar situation." Defendant avers "counsel's errors were the direct and proximate cause" of his sentence of life without parole, and he would not have entered a plea and would have insisted on going to trial if he

had known there was no promise of parole after serving ten to fifteen years of incarceration.

Defendant's claim is refuted by the record. First, at the beginning of the proceedings held on April 15, 2009, and prior to the Court accepting Defendant's plea, a discussion was held between the Court and Defendant's counsel indicating Defendant was entering a plea of no contest to life under the two counts of the indictment with a concurrent sentence under Count 2 and the State would be dismissing the sexual battery case in the consolidated information. The State further clarified and Defendant's counsel agreed, the understanding Defendant was entering a plea "under Count 1 of the Indictment to a stipulated lesser included offense of Second [D]egree Murder with a Firearm" and would plea as charged to Count 2, child neglect, with the State entering a nolle pros to Count 3, sexual battery, based on the pleas; and pursuant to the agreement, the court would enter the agreed upon life sentence with a twenty-five year minimum mandatory term and a concurrent five-year state prison sentence on the charge of child neglect. Second, during the plea colloquy, the Court indicated its understanding that the Defendant was pleading no contest in Count 1 to the lesser included offense of second-degree murder with a firearm, and to Count 2, child neglect, with a nolle pros by the State of Count 3, sexual battery, if Defendant's plea was accepted by the Court and Defendant concurred with the Court's statement. Third, the Court specifically inquired of Defendant if any promises or expectations had been made to him by anyone and if he understood the sentence of life without parole meant Defendant would spend the rest of his life in prison unless there was an executive action taken either by the current governor or some future governor to which Defendant indicated he understood. Moreover, Defendant's counsel addressed the issue of clemency during the proceedings indicating he had previously discussed with his client "certain steps" which could be helpful in seeking clemency, but reiterated he had "not put any odds or likeliness or any of that to it" to which Defendant agreed. Lastly, following defense counsel's discussion with Defendant regarding the issue of clemency, the court inquired if Defendant understood he would "quite likely" spend the remainder of his life in prison to which

Defendant answered in the affirmative. *Bond v. State*, 695 So. 2d 778 (Fla. 1st DCA 1997) (where any misunderstanding the defendant may have had regarding his plea after a discussion with his attorney was corrected at the plea hearing by the information provided by the court). The Court accepted Defendant's plea of no contest to Count 1, to the lesser included offense of second-degree murder with a firearm, and to Count 2, child neglect, as freely and voluntarily entered into with the State announcing a nolle pros of Count 3, sexual battery.

(Ex. E, pp. 61-63) (citations to record attachments omitted).

The record amply supports the state court's findings. During the plea-sentencing hearing, the prosecutor stated the following with regard to petitioner's sentence: "And then the defendant, pursuant to the agreement, the court would impose an agreed sentence of life in prison with a 25-year minimum mandatory term." (Ex. B, p. 4). The following exchange occurred shortly thereafter:

THE COURT: Let me just understand this now.

He is entering a plea of no contest.

If I accept it, the agreed upon sentence is life with a 25 year minimum mandatory in Count 1.

What does that mean so he –

MR. ELMORE [prosecutor]: Judge, that means life without parole.

THE COURT: Life without parole. He is pleading no contest, and that's what I thought it meant, I just wanted to make sure. When you plead no contest the question I'm going to ask is: Is this in your best interest or are you in fact guilty?

So I just want to make sure how is it in his best interest? If he were convicted and – if he went to trial and was convicted, he still would be facing the same. Is that correct?

MR. ALLRED [defense counsel]: I'll explain that when – when Mr. Hodges wants me to summarize what he has told us during our meetings with him in the last couple of months about how this actually occurred. And I think when I conclude with my summary of how this happened, the Court will understand why he feels it is in his best interests to plea to Second.

THE COURT: Okay. And this will be when I ask you, "Is there a factual basis" that you want to provide it to me then.

MR. ALLRED: Yes, If I may.

THE COURT: You may.

And, Mr. Elmore, do you have any –

MR. ELMORE: Judge, normally I would state a factual basis for the offense, but if counsel states a factual basis that the State is satisfied with, that won't be necessary, I suppose.

THE COURT: Okay. My only caution. Mr. Elmore is correct. It's typically that either you stipulate to it or he would state the factual basis.

MR. ALLRED: I'll stipulate to a factual basis, except the court wanted to know why it was in his best interests. And I was going to –

MR. ELMORE: In cases of this serious nature, Judge, I normally state a factual basis to avoid any claims concerning that later.

THE COURT: And I think that is appropriate. Whatever you are going to explain you don't think will contravene his plea though?

MR. ALLRED: No, sir. I think it will make an understanding on everybody's part as to why we negotiated this particular plea.

(Ex. B, pp. 7-9). Petitioner was placed under oath, and the trial court conducted an

extensive plea colloquy. Petitioner stated that he was satisfied with his defense attorneys' representation (Mr. Allred, Mr. Polk and Mr. Johnson). (*Id*., p. 13). The court asked petitioner if he was entering a plea of no contest "because you are in fact guilty or because it is in your best interest", to which petitioner responded, "Yes, sir." (*Id*., p. 14). The court read petitioner the constitutional rights he was waiving by entering his plea, and asked petitioner if he understood those rights and that he would be waiving them. (*Id*., pp. 14-15). Petitioner responded: "Yes, sir" and further affirmed that he had spoken to his attorneys about entering the plea. (*Id*., p. 15). Petitioner affirmed that no one had "threatened, forced, or coerced" him to enter a plea of no contest, and that he was entering the plea of his own free will. (*Id*., p. 16). After defense counsel interjected that petitioner had spoken with his parents about the plea as well, the court asked: "And you've spoken to your parents and you've discussed this with them. You've considered all of your options." (*Id*., p. 17). Petitioner responded: "Yes, sir. This is clearing my conscience." (*Id*.). The Court clarified: "And you have thought about it, several days or several weeks you have thought this through?" (*Id*.). Petitioner responded in the affirmative. (*Id*.). The prosecutor placed the following factual basis on the record:

> Your Honor, the State would be prepared to prove at trial that on December 3, of 2007, the defendant was in Milton, Florida.
>
> That telephone records reflect that he made approximately 33 phone calls around 1 a.m. in the morning to the victim's cell phone, [victim's name redacted] cell phone. The evidence would show that she was at her residence [redacted] Street in Milton, Florida when those calls were placed.
>
> The evidence would show at that period in their life story they were at odds in an up and down relationship, according to numerous witnesses.

The State would be prepared to prove that at approximately 3:00 a.m. the defendant shot [redacted] with a .357 caliber or .38 caliber handgun, once in the head, resulting in her death.

The defendant's vehicle was seen leaving her home at [redacted] Street by eye witnesses, who recognized his distinctive vehicle.

The defendant left his and the victim's 3-year old child, [redacted] alone and unattended in the mobile home with the body of the deceased victim, [redacted].

At approximately 8:30 a.m. the child and the victim's body were discovered by a relative, [redacted]. The child immediately stated to her that her daddy had killed her mother.

(*Id.*, pp. 19-20). The prosecutor went on to detail additional evidence supporting the charges: the child's numerous and consistent statements to various people that petitioner was present when the child heard the gunshot and that petitioner told the child that he killed her mother; petitioner's denial to law enforcement that he had been at the scene; petitioner's denial to law enforcement of having a sexual relationship with the victim for over a month; petitioner's denial to law enforcement of owning or possessing a .38 caliber or .357 caliber handgun; the presence of petitioner's semen in the victim's vagina; the presence of petitioner's skin underneath at least one of the victim's fingernails; testimony of numerous witnesses that petitioner did in fact own and possess a .357 caliber handgun and was in possession of it the night of the murder; and testimony of numerous witnesses that petitioner exhibited prior violent conduct toward the victim and threatened to kill or harm the victim. (*Id.* pp. 20-21). Defense counsel Mr. Allred stipulated to the State's factual basis, adding that he "need[ed] to supplement it." (*Id.*, p. 21). Mr. Allred noted: "[W]hen the Court posed the question to Mr. Hodges you said, 'Are you pleading no

contest because either you are guilty or it's in your best interests?' And [petitioner] said, 'Yes.' So he needs to specify that he believes it is in his best interests." (*Id*., p. 22). Petitioner confirmed to the trial judge that he believed the plea to be in his best interests. (*Id*.).

Defense counsel Allred explained why petitioner believed the plea to be in his best interests, starting with petitioner's version of the story: that after an evening out, petitioner returned to his home and placed phone calls to the victim; that after the calls kept getting dropped (disconnected), petitioner went to the victim's trailer and the victim let him in; that when petitioner entered the victim's residence he had his firearm tucked in the front of his pants but had a shirttail over the gun; that petitioner and the victim talked about reconciling and, after deciding to move forward with their relationship, retired to the bedroom to make love; that petitioner removed the firearm and placed it on top of the dresser; that after having consensual sex, the victim dressed and she and petitioner laid in bed, watched TV and smoked cigarettes; that when petitioner got up to leave, he retrieved his firearm from the dresser and took the victim's cell phone and opened it up; that petitioner determined that the victim had been talking during the couple's period of separation to other men; that petitioner commented to the victim about what he saw on her cell phone and they had a brief argument; that petitioner turned and started to leave with the victim's cell phone; that the victim got out of bed, approached the doorway where petitioner was standing, and pushed petitioner; that petitioner spun around and held the gun to the victim's head and cocked it; that about the time petitioner realized the gun was cocked and was going to uncock it, the victim knocked petitioner's arm and the gun went off. (*Id*., pp. 23-25). Mr. Allred explained that petitioner believed the plea to be in his best

interests because, while petitioner could make a plausible case that the killing was no worse than manslaughter, the State not only had strong evidence of premeditation, but also had a strong argument for first degree felony murder, the killing having taken place in the course of a robbery (petitioner had the victim's cell phone in his possession and ultimately took it to dispose of it). Petitioner and his counsel felt it was better for petitioner "that the case be settled as a second degree instead of risking all with a jury to try to promote a manslaughter theory." (*Id.*, p. 27). Mr. Allred elaborated:

> So overall, that is the reason that we had offered the plea to a lesser degree of homicide for the same sentence that he would otherwise get, but under much more favorable circumstances for Mr. Hodges.
>
> As he would tell the court and those present, he is ready to try to put this thing, take responsibility, and put it to rest, hoping to promote closure eventually, and some peace in the minds of the families, his and [the victim's] family, and the friends that have, you know, emotional stakes in this as well.
>
> He has reached a peace that is noticeable when I talk to him. . . .

(*Id.*, pp. 27-28). The prosecutor and defense counsel both agreed that there was a factual basis for petitioner's plea. (*Id.*, p. 28). The prosecutor requested that petitioner be questioned specifically about the voluntary nature of his plea and stipulated sentence, especially on the issue of coercion or promises. The prosecutor stated:

> I want the defendant questioned specifically by the court that he understands this sentence under Florida law is life without parole. And there is no release other than the only possible relief is executive action by the Governor in the form of Clemency. And I would like the court to determine if the defendant has received any promises or statements

that suggest to him that he will receive Clemency. Clemency is the Governor's power only. It would be, if granted, it would be granted by a governor that we don't even know his name yet, who hasn't been elected yet. And so I want to make certain that the defendant hasn't been influenced by any promise that he likely would receive Clemency on these charges."

(*Id.*, pp. 30-31). The Court inquired of petitioner as follows:

THE COURT: And, Mr. Hodges, I'll ask you that. Have any promises been made to you whatsoever?

THE DEFENDANT: No, sir.

THE COURT: By anyone?

MR. ALLRED: No.

THE COURT: And you understand that life without parole, which is what you are pleading to today, means life without parole.

And Mr. Elmore is correct, unless there was some sort of executive action taken either by the current governor or some future governor.

THE DEFENDANT: Yes, sir.

THE COURT: And you have no expectation, or no promises, or no help that it would happen?

THE DEFENDANT: No, sir.

THE COURT: And so you understand, if I accept your plea, when I sentence you that you will spend the rest of your life in prison. Do you understand that?

THE DEFENDANT: Yes, sir.

(*Id.*, pp. 31-32). The prosecutor requested that the issue of petitioner's waiver of a

Presentence Investigation ("PSI") be clarified: "[H]e would have to make a knowing and voluntary waiver of that right to a Presentence Investigation with the understanding that the Court would impose the agreed sentence of life with five years concurrent, and a 25-year minimum mandatory pursuant to the firearm, 10-20-Life Law, immediately following the conclusion of the plea, and the acceptance of the plea." (*Id.*, pp. 32-33). Mr. Allred affirmed that he discussed with petitioner his right to a PSI, and that petitioner agreed to waive it. (*Id.*, p. 33). Mr. Allred explained: "Since there is a plea agreement that involves a fixed sentence . . . it is a meaningless administration procedure to get a PSI." (*Id.*). The court asked petitioner if he agreed with Mr. Allred's statement, and petitioner responded, "Yes, sir." (*Id.*). The court asked petitioner if he "agree[d] to be sentenced today with no Presentence Investigation"? (*Id.*). Petitioner responded, "Yes, sir." (*Id.*).

Defense counsel Allred went even further than the trial court in ensuring that petitioner's plea was not based on any promise or misunderstanding concerning clemency:

> MR. ALLRED: Let me address a little bit further with him about the Executive Clemency because – We have discussed with you certain steps that you may find helpful in one day seeking it, correct?
>
> THE DEFENDANT: Yes, sir.
>
> MR. ALLRED: But we have not put any odds or likeliness or any of that to it, is that correct?
>
> THE DEFENDANT: Correct.

(*Id.*, pp. 33-34). The trial court found that petitioner's plea was freely and voluntarily entered, and accepted petitioner's plea. (*Id.*, p. 34). Petitioner then addressed the

court, the victim's family and his own family stating, in relevant part:

> I am talking [sic] responsibility for a mistake that I made (CRYING) – that caused the tragic accident that has changed the lives of so many people, especially my daughter, [redacted] (CRYING).

> Because of an accident caused by a reckless lifestyle focused on no one but myself, I have taken both of her parents out of her life. . . .

> I have been trying to make sense of my life since this happened, and the only way that I have to look is up. In studying the Bible I've learned that I can't change myself unless I seek help from God.

> I have must, I have also learned that I could not live the righteous life with lies, and I must abide in the truth. And to do this I must accept responsibility for my mistakes.

> . . . .
> And I am doing this because the Lord has put it within my heart that I must be real with him to abide in his grace and mercy.

> The last step is to abide by every word that is in the Bible, and I'll have the rest of my life putting God first in everything I do.

(*Id*., pp. 38-40). Less than a year passed between petitioner's sworn statements in open court and his challenge to his plea.

The Supreme Court has held that a petitioner's sworn representations to the trial court during his plea colloquy constitute "a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). Although a defendant's attestation of voluntariness at the time of his plea is not an absolute bar to later contrary contentions, it places a heavy burden upon him. *Blackledge*, 431 U.S. at 74-75. Petitioner must show such a strong degree of

misunderstanding, duress, or misrepresentation by the court, prosecutor, or his own counsel that his plea would become a constitutionally inadequate basis for imprisonment. *Id*. Petitioner does not meet this heavy burden. The state court's findings – that no one made petitioner any promises concerning clemency and that petitioner knew he would spend the rest of his life in prison – are amply supported by the record. Petitioner was told, unequivocally and on several occasions by the prosecutor, the trial judge and Mr. Allred that he would spend the rest of his life in prison without the possibility of parole. Petitioner made no indication that that was not his understanding. Petitioner was asked separately, by the trial judge and by Mr. Allred, whether he understood he would spend the rest of his life in prison. Petitioner affirmed his understanding. Petitioner was present when the prosecutor and Mr. Allred stated to the court that there was no need for a PSI because petitioner was agreeing to a fixed sentence – life in prison without the possibility of parole. Petitioner made no indication to the contrary and affirmatively waived his right to a PSI. Petitioner was asked separately, by the trial judge and by Mr. Allred, whether he was given any promises with regard to clemency and whether he had any expectations that he would receive clemency. Petitioner affirmed that no one had made him any promises concerning clemency, that he understood that a sentence of life without parole meant he would serve life in prison without parole, and that he entertained no expectations concerning clemency or the likeliness thereof. Petitioner has not rebutted the state court's findings with clear and convincing evidence that Mr. Allred promised him he would receive executive clemency within 10 to 15 years of sentencing. The state court's rejection of petitioner's claim was not contrary to clearly established federal law, and did not involve an unreasonable application of

clearly established federal law.

Petitioner argues in his reply that the state court record does not rebut his claim – indeed, "the plea colloquy is of no moment" – because petitioner's claim "is based solely on the advice and discussions that took place outside the record" during his meetings with Mr. Allred. (Doc. 30, p. 2). Petitioner details some of those discussions in his unsworn supporting memorandum (doc. 2):

> Petitioner asserts that his affirmative response to the State trial Court during sentencing was premised solely on Counsel's advice. Petitioner asserts that counsel Allred informed him that the Court would inquire as to his understanding of the possibility of life in prison, however, attorney Allred informed Petitioner that this was standard practice of the Court because it is the Court's ministerial duty to inform a Defendant of the possible maximum sentence for each offense.
>
> Petitioner, however, was unaware due to his ignorance and inability to understand the law, coupled with advice from counsel[,] that the sentence that the Court was explaining was the **actual sentence** he would serve. Through discussion with attorney Allred, with Petitioner and Petitioner's family, Petitioner was led to believe that the most he would serve in prison would be twenty five years for the offense of Second Degree Murder **if** he was not released by a clemency award after serving ten to fifteen years.
>
> There is a difference between a "promise" as commonly understood, and an attorney's **expert advice** to this client based upon the attorney's computation and estimate of the actual amount of time a defendant may serve on a sentence. Petitioner cannot infer to this Court that counsel made a "promise," but Petitioner asserts that Counsel erroneously advised him as to possible sentence, consequences of plea, and interpretation of Court proceedings in regards to record inquiry by the State trial court in regards to possible maximum sentence.

(Doc. 2, pp. 4-5). Petitioner's new factual assertions – that Mr. Allred told petitioner

that any discussions during the plea colloquy concerning petitioner's sentence would relate to petitioner's <u>possible</u> sentence and not his <u>actual</u> sentence, and that Mr. Allred told petitioner he would not be required to serve more than twenty-five years in prison – were never presented to the state court (even though they could have been) and cannot be considered here. *See Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011) ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."); *id.* at 1400 ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."); *Borden v. Allen*, 646 F.3d 785, 816-17 (11th Cir. 2011) (holding that in reviewing a claim under § 2254(d)(1), the federal court is confined to the allegations made in the prisoner's state court pleading; "Logically, [the state] court could only undertake an 'adjudication of the claim' that was presented to it; we believe that a review of a state court adjudication on the merits in light of allegations not presented to the state court – for example, by examining additional facts or claims presented for the first time in a petitioner's federal habeas petition – would insufficiently respect the 'historic and still vital relation of mutual respect and common purpose existing between the States and the federal courts.'") (*citing Powell v. Allen*, 602 F.3d 1263 (11th Cir. 2010)).

Because petitioner does not overcome §2254(d)(1)'s limitations, federal habeas relief should be denied and, correspondingly, petitioner is not entitled to an evidentiary hearing. *Schriro v. Landrigan*, 550 U.S. 474, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007) (noting that when the state-court record "precludes habeas relief" under the limitations of § 2254(d)(1), a district court is "not required to hold an

evidentiary hearing.").

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Kenneth S. Tucker has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

1.  That the petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. Daniel Lee Hodges, Jr.* in the Circuit Court for Santa Rosa County, Florida, Case No. 07-1734 be DENIED, and that the clerk be directed to close the file.

2.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 29th day of October, 2012.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).